## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

JOHN ANGELO LAPAGLIA,
     Plaintiff,

     v.

TRANSAMERICA CASUALTY
INSURANCE COMPANY,
     Defendant.

No. 3:15-cv-0616 (JAM)

### ORDER OF DISMISSAL FOR LACK OF SUBJECT MATTER JURISDICTION

Plaintiff is a citizen of Connecticut, and he has filed this diversity action *pro se* and *in forma pauperis* alleging a breach of a travel insurance contract by defendant, a Pennsylvania insurance company. I will dismiss this action, because I conclude that plaintiff has not plausibly alleged facts or otherwise adduced evidence to satisfy the minimum amount in controversy of $75,000 that is required for this Court's diversity jurisdiction.

### BACKGROUND

Plaintiff's initial complaint requested damages for some quantity in excess of $10,000 arising from detailed facts that are described below. Doc. #1. The Court entered an order to show cause for plaintiff to establish by means of affidavit or other documentary evidence that his claim was for more than $75,000 as required to sustain diversity jurisdiction under 28 U.S.C. § 1332. Doc. #8. In response, plaintiff filed an amended complaint alleging $110,000 or more in damages. Doc. #9.

According to the amended complaint, plaintiff spent $65 in April 2013 to purchase a "Travelex" travel insurance policy that was allegedly underwritten by defendant Transamerica Casualty Insurance Company. The next day, plaintiff bought a plane ticket and paid for lodgings in London. On May 4, 2013, plaintiff flew to London, but upon arrival there was "stopped,

refused entry into the nation of the United Kingdom, and detained by the 'United Kingdom Border Agency.'" Doc. #9 at 4. Plaintiff was thereafter detained for five days, and during this time "was interrogated and tortured while imprisoned, and . . . did not get much sleep." *Ibid*. His laptop computer and business suits were also damaged during his detainment.

At some point, plaintiff flew back to the United States but upon arrival in New York he was interrogated and tortured for many hours by two "American Police State Agents" who "wanted [him] to confess, and write a written confession, for crimes [he] did not commit." *Id*. at 5. Plaintiff was "incredibly tired and worn-out from . . . detainment and torture" and so he immediately went to an airport motel where he stayed for nine days. *Ibid*.

After this ordeal, plaintiff submitted a travel insurance claim for the costs of his trip to London, for replacement of his damaged laptop computer, and for his motel stay after returning to the United States. These claims were denied.

Plaintiff further alleges that he has "been unable to afford to travel to the glorious and eternal nation of the 'Democratic People's Republic Of Korea', and obtain employment as a full-time working 'Propagandist' or more specifically, a 'Public Relations Propagandist', under the supreme leadership of the Dear Leader Kim Jong-Un." *Ibid*. According to plaintiff, if defendant had paid his insurance claim, then he would have had funds to travel to North Korea where he "would have earned, at a very conservative estimate, at the bare minimum dollar amount of: '$100,000 (One-Hundred Thousand United States Dollars).'" *Id*. at 11.

Plaintiff identifies eight exhibits to his complaint that corroborate his expenses for the cost of his flight to London (about $469), for lodging in London (about $52), for replacement of his laptop (about $1,740), and for compensation for his New York motel stay (about $1,612). There is no documentation for plaintiff's claim of a lost employment opportunity in North Korea.

## DISCUSSION

Federal diversity jurisdiction requires an amount in controversy of at least $75,000. *See* 28 U.S.C. § 1332(a). Ordinarily, this amount is measured as of the time that a complaint is filed, *see Hall v. EarthLink Network, Inc.*, 396 F.3d 500, 506 (2d Cir. 2005), and it is established by the face of the complaint and the dollar amount actually claimed. *See Horton v. Liberty Mut. Ins. Co.*, 367 U.S. 348, 353 (1961); *Scherer v. Equitable Life Assurance Soc'y of U.S.*, 347 F.3d 394, 397 (2d Cir. 2003).

In recent years, the Supreme Court has made clear that a federal court complaint must do more than allege facts that might remotely or conceivably allow for a plaintiff to prevail; instead, a complaint must allege facts in a non-conclusory manner that plausibly establish grounds for relief. *See, e.g., Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Of course, the allegations of a *pro se* plaintiff's complaint must be read liberally to raise the strongest arguments that they suggest, but the Second Circuit has held that even a *pro se* complaint must ultimately meet this threshold "plausibility" requirement—that is, to allege facts that state a claim for relief that is plausible on its face. *See Fowlkes v. Ironworkers Local 40*, 790 F.3d 378, 387 (2d Cir. 2015).

Moreover, although the plausibility requirement is most commonly applied in the context of evaluating whether a complaint substantively states a claim for relief, there is little reason to suppose that it should not equally govern the evaluation of factual allegations that support federal subject matter jurisdiction, such as to evaluate facts alleged concerning an amount in controversy for purposes of federal diversity jurisdiction. And so the Second Circuit has implicitly concluded in at least one unpublished decision. *See Wood v. Maguire Automotive, LLC*, 508 Fed. Appx. 65, 65 (2d Cir. 2013) (affirming dismissal of complaint for lack of subject matter jurisdiction where

3

plaintiff's "allegation in her complaint of $75,000 in controversy is conclusory and not entitled to a presumption of truth") (citing *Iqbal*, 556 U.S. at 681).

Some commentators contend that the plausibility requirement should not apply when evaluating fact-based jurisdictional allegations. *See* Jacob J. Taber, *Silly Jurist, Twiqbal's for Claims: Pleading Jurisdiction After Twombly and Iqbal*, 89 N.Y.U. L. Rev. 1867 (2014); James E. von der Heydt, *Ripple Effects: The Unintended Change to Jurisdictional Pleading Standards After Iqbal*, 60 Clev. St. L. Rev. 799 (2012); *but see* S.I. Strong, *Jurisdictional Discovery in United States Federal Courts*, 67 Wash. & Lee L. Rev. 489, 569-575 (2010) (advocating extension of the plausibility standard to include jurisdictional facts alleged in a complaint).

I am not persuaded. Rule 8 of the Federal Rules of Civil Procedure imposes dual requirements in very similar terms that a plaintiff set forth the basis both for jurisdiction as well for a substantive claim. *Compare* Fed. R. Civ. P. 8(a)(1) (requiring "a short and plain statement of the ground for the court's jurisdiction"), *with* Fed. R. Civ. P. 8(a)(2) (requiring "a short and plain statement of the claim showing that the pleader is entitled to relief"). It would be "highly incongruous to require separate pleading standards for two subsections of the same rule," especially considering that "the factual nature of the claims surrounding the grounds for jurisdiction are, more often than not, intertwined with the factual allegations showing that the pleader is entitled to relief." *Haley Paint Co. v. E.I. Dupont De Nemours & Co.*, 775 F. Supp. 2d 790, 798-99 (D. Md. 2011).

For cases that are removed from a state court to federal court on the basis of diversity jurisdiction, the Supreme Court has concluded that a defendant's notice of removal must contain "a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 135 S. Ct. 547, 554 (2014). If a defendant who

seeks to invoke a federal court's jurisdiction must plausibly allege the requisite amount in controversy, I do not see why a plaintiff should not likewise be required to allege facts sufficient to allow for a plausible inference that the amount in controversy meets the jurisdictional threshold.

Nor would application of the plausibility standard be inconsistent with existing precedent that presupposes the authority of a court to permit jurisdictional discovery to test any questionable jurisdictional allegations of a complaint. *See* Taber, 89 N.Y.U. L. Rev. at 1893-94. The discovery option remains equally available without regard to whether a complaint has been initially reviewed to ensure that its allegations are at least plausible on their face. Absent a court's ability to require at least facially plausible allegations of subject matter jurisdiction, any plaintiff would be free to assert extravagant, unfounded, and conclusory claims of jurisdiction, and a court would be faced with no option in response but to impose expensive and time-consuming discovery, all of which ill-serves the aim of the federal rules "to secure the just, speedy, and inexpensive determination of every action and proceeding." Fed. R. Civ. P. 1.

As the Supreme Court has oft made clear, the federal courts "have an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party." *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006); *see also* Fed. R. Civ. P. 12(h)(3). It would be anomalous to suppose that a court is bound in the exercise of this duty to accept a vacuous or facially absurd claim of jurisdiction-conferring facts absent a prolongation of the lawsuit to allow for discovery on this issue. This runs counter to the long-established rule that "a suit may sometimes be dismissed for want of jurisdiction where the alleged claim under the Constitution or federal statutes clearly appears to be immaterial and

made solely for the purpose of obtaining jurisdiction or where such a claim is wholly insubstantial and frivolous." *Bell v. Hood*, 327 U.S. 678, 682-83 (1946).

As a practical matter, I cannot fathom that a plaintiff who has a genuine good faith factual basis for invoking a federal court's subject matter jurisdiction will be unable to allege facts that at least plausibly support this jurisdiction. This is especially so for facts concerning a jurisdictional amount in controversy, because there is little reason to suppose that a plaintiff would not have ready access to this information about the harm he or she has suffered and without the need to pursue this information from a defendant through discovery. At least for cases in which federal subject matter jurisdiction turns on the existence of one or more facts (such as a minimum amount in controversy), the better and more sensible rule is that a plaintiff must initially plead any necessary facts that plausibly establish subject matter jurisdiction.

Here, I conclude that the complaint falls short of alleging facts that plausibly show an amount in controversy of more than $75,000. Plaintiff bases $100,000 of his total $110,000 claim for damages on his alleged loss of the opportunity for employment as a propagandist for the supreme leader of North Korea. Plaintiff does not allege facts that make plausible his claim that he was positioned to earn no less than $100,000 from employment for the government of North Korea and that defendant's failure to pay his insurance claim deprived him of this opportunity. *See, e.g., Burns v. King*, 160 F. App'x 108, 111 (2d Cir. 2005) (affirming dismissal of diversity complaint where the district court determined plaintiff's defamation claim and alleged resulting loss of summer employment to not reach the required amount in controversy).

Even if I were to credit as facially plausible the amount-in-controversy allegations of the complaint, plaintiff was obliged under the terms of the Court's order to show cause to adduce evidence by means of affidavit or other documents to substantiate his claim of more than

$75,000. Although he has admirably done so with respect to his travel-related and computer-related expenses, these expenses fall far below the $75,000 threshold, and he has not adduced any evidence with respect to his claim of a lost employment opportunity in North Korea.[1]

"Where, as here, jurisdictional facts are challenged, the party asserting jurisdiction must support those facts with competent proof and justify its allegations by a preponderance of evidence." *United Food & Commercial Workers Union, Local 919, AFL-CIO v. CenterMark Properties Meriden Square, Inc.*, 30 F.3d 298, 305 (2d Cir. 1994) (internal quotation marks and brackets omitted); *see also Tongkook Am., Inc. v. Shipton Sportswear Co.*, 14 F.3d 781, 785 (2d Cir. 1994) (notwithstanding any "good faith" on plaintiff's part with respect to allegations of complaint, a complaint may be dismissed "where it is apparent that, to a legal certainty, [plaintiff] could not recover the requisite jurisdictional amount") (internal quotation marks omitted). This lack of evidence convinces me that no federal jurisdiction exists in this case.

## CONCLUSION

This action is DISMISSED for lack of federal jurisdiction pursuant to Fed. R. Civ. P. 12(h)(3). My ruling concerns jurisdiction only and does not constitute a finding that plaintiff was not subject to the mistreatment or abuse that he has alleged. This ruling is without prejudice to plaintiff's filing of a complaint in state court that would not be subject to the amount-in-controversy requirement that applies for diversity actions that are filed in a federal court. Plaintiff's motion for extension of time (Doc. #10) is DENIED as moot. The Clerk is directed to close this case.

---

[1] For this same reason, plaintiff's damages claim for pain and suffering and emotional distress does not meet the jurisdictional threshold insofar as it is premised on loss of an employment opportunity in North Korea. To the extent that it is premised on his mistreatment by others, they are not named as defendants in this action.

It is so ordered.

Dated at New Haven this 4th day of January 2016.

/s/ *Jeffrey Alker Meyer*
Jeffrey Alker Meyer
United States District Judge